UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| AMANDA ROLLINS and | ) | |
| JILL FRANKLIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.: 1:19-CV-282-KAC-CHS |
| v. | ) | |
| | ) | |
| POLK COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiffs' "Motion for Partial Summary Judgment" [Doc. 103] and Defendants' "Motion for Summary Judgment" [Doc. 145]. For the reasons below, the Court **DENIES** Plaintiffs' "Motion for Partial Summary Judgment" [Doc. 103] and **GRANTS IN PART** Defendants' "Motion for Summary Judgment" [Doc. 145]. Further, the Court **STAYS** this action until **December 16, 2024** and **DENIES** the Parties' pending Motions in Limine and Objections [Docs. 160-67, 172, 173, 174, and 181] as **MOOT**.

### I.    Background

Defendant Polk County Board of Education ("PCBOE") administers public schools in Polk County, Tennessee. Defendant James Jones has served as the Director of Schools for Defendant PCBOE since 2005 [Doc. 74-1 at 1]. Plaintiff Amanda Rollins began teaching in Polk County in 2002 after receiving her professional teaching license [*See* Doc. 70-1 at 2]. She became a tenured teacher in 2005 and became a kindergarten teacher at Copper Basin Elementary School, in Polk County, in 2007 [*See id.*]. Plaintiff Jill Franklin became the principal of Copper Basin Elementary School in 2015 [Doc. 70-2 at 2]. She also has a professional teaching license [*See id.* at 1]. In the

timeframe relevant to this action, Plaintiff Rollins was a tenured teacher [*See* Docs. 104 at 2, 146 at 2]. Plaintiff Franklin was a non-tenured teacher [*See* Docs. 104 at 2, 146 at 2-3].

While Plaintiff Rollins was a tenured teacher at Copper Basin,[1] Defendant PCBOE had a Memorandum of Understanding ("MOU") with certain teachers it employed [*See* Doc. 70-4 at 3-14; *see also* Doc. 146 at 2]. The MOU provides that "[n]o employee shall be punished without just cause" [Doc. 70-4 at 7]. The MOU applied to Plaintiff Rollins [*See* Docs. 104 at 2, 146 at 2].

Defendant PCBOE also had policies in place governing its management of non-tenured teachers. In particular, Polk County Board of Education Policy 5.200 governed "Suspension/Dismissal of Non-Tenured Teachers" [Doc. 74-1 at 247]. That Policy provided that a "director of schools/designee may suspend a non-tenured teacher at any time when deemed necessary" and "may dismiss any non-tenured teacher during the contract year for incompetence, inefficiency, insubordination, improper conduct, or neglect of duty" [*Id.*]. The policy applied to Plaintiff Franklin [*See* Doc. 146 at 3].[2]

Defendant Jones alleges that in April 2019[3] he received a report from an employee that Plaintiffs were engaging in malfeasance [*See* Doc. 74-1 at 2]. Specifically, Defendant Jones alleges that he received a report of "an alleged misuse of school funds":

> [Plaintiff] Franklin took $10,000 the school had raised through bake sales and other fundraisers and gave it to [Plaintiff] Rollins. [Plaintiff] Rollins, in turn, gave these

---

[1] The Court refers to Plaintiffs' employment with Defendant PCBOE in the past tense without determining whether Plaintiffs have formally and finally been terminated.

[2] Plaintiffs state that Plaintiff Franklin also had an "employment contract" with Defendant PCBOE, [Doc. 104 at 3], but "Defendants have failed to produce a copy of" that "employment contract through discovery," [*id.* at 10]. And no Party has identified evidence of the contents of that contract. Therefore, any employment contract that existed between Plaintiff Franklin and Defendant PCBOE is not in the record.

[3] The record contains some discrepancy as to which precise date in April 2019 the events in this paragraph and the next occurred [*See* Docs. 74-1 at 2 ("On April 19, 2019 . . . ."), 104 at 3 ("On April 25, 2019 . . . ."), 146 at 3 ("In April 2019 . . . .")]. For the purposes of this Memorandum Opinion and Order, the precise date of the events in April 2019 is immaterial.

school funds to her husband, who deposited them into the Rollins' bank account. Mr. Rollins then wrote a check to Copper Basin Elementary School for $10,000 and applied for a matching donation with his employer, Whirlpool Corporation. These allegations . . . if true, [] involved misappropriation of school funds . . . [and] the possibility that Whirlpool had been defrauded.

[*Id.*; *see also* Doc. 148-6 at 2 (Deposition of James Jones ("Jones Dep.") 47:9-48:24)]. Defendant Jones alleges that, upon receiving that report, he "went to [Copper Basin Elementary School] to meet with" Plaintiffs [Doc. 74-1 at 2]. The relevant Parties' accounts of what happened at that meeting differ.

At Plaintiff Franklin's deposition, she testified that Defendant Jones asked her, "Did you write a grant to Whirlpool?" [Doc. 148-2 at 18 (Deposition of Jill Franklin ("Franklin Dep.") 79:6-8)]. After she responded affirmatively, Defendant Jones said, "[y]ou're going to have to be suspended" [*Id.* (Franklin Dep. 79:8-9)]. Plaintiff Franklin further testified that Defendant Jones "did not" give her "the details of the story he had heard" [*Id.* (Franklin Dep. 79:10-12)]. Similarly, Plaintiff Rollins testified that, after Defendant Jones questioned Plaintiff Franklin, he asked Plaintiff Rollins "did you know she wrote th[e] grant," to which Plaintiff Rollins responded "yes" [*See* Doc. 148-10 at 11-12 (Deposition of Amanda Rollins ("Rollins Dep.") 54:18-55:5)]. Defendant Jones thereafter "suspended" Plaintiff Rollins "for knowing it and not reporting it" [*See id.* at 12 (Rollins Dep. 55:5-6)].

Defendant Jones, however, testified that, upon beginning the meeting with Plaintiffs, he said to Plaintiffs: "It has been told to me that there is—that there are school funds being used for a matching program with Whirlpool, where a person makes a donation and Whirlpool matches that donation, and that there is—and that there is—and that they use it as a tax writeoff" [Doc. 148-6 at 10 (Jones Dep. 66:3-8)]. He then asked Plaintiffs if those allegations were true, to which they each responded affirmatively [*See id.* at 11-12 (Jones Dep. 67:19-68:17)]. Defendant Jones

testified that he then said, "I'm going to have to place you all on leave pending an investigation" [*Id.* at 12 (Jones Dep. 68:22-23)].

In May 2019, Defendant Jones sent two (2) "Director's Report[s] Regarding Licensed Teacher/Administrator" to Tennessee's State Board of Education [*See* Docs. 70-6, 70-7]. In the Reports, Defendant Jones indicated that he had received a report "that the Principal of Copper Basin Elementary School [was] involved in a plan to gain more money for a field trip to help pay student's way to Savannah, Georgia." [Docs. 70-6 at 3, 70-7 at 3]. He continued:

> [T]here was a "matching plan" where if a person that worked for Whirlpool would make a donation, Whirlpool would match it. So, [Plaintiff] Franklin took money that had been made from bake sales and other fundraisers and gave that money to a teacher's husband that worked for Whirlpool. In return, he wrote a check to the school for that amount of money. Then they applied for the matching grant from Whirlpool using that information. [Plaintiff] Rollins is the name of the teacher whose husband works at Whirlpool. The amount was $10,000. I [] went up to Copper Basin Elementary School and talked to [Plaintiffs]. . . . [They] said it was true and that they all . . . had their part in it.

[Docs. 70-6 at 3, 70-7 at 3].

On October 5, 2019, Plaintiffs originally filed this action [*See* Doc. 1]. Protracted litigation began. That litigation continues today. While the litigation was ongoing, the Parties also continued engaging in an administrative process [*See* Docs. 104 at 3-4; 146 at 6-11].

On December 7, 2021, Defendant Jones sent Plaintiff Franklin a letter regarding "[t]ermination of" her "employment" [Doc. 74-1 at 308-309]. The letter stated that Defendant Jones was "terminating" Plaintiff Franklin's "employment" [*Id.* at 309]. The letter advised that if Plaintiff Franklin wished "to contest [the] decision," she "may appeal to an impartial hearing officer selected by" Defendant PCBOE [*Id.*]. On December 16, 2021, Defendant Jones sent Plaintiff Rollins a letter indicating that the "Polk County School Board certified" that the "charges" "warrant your dismissal" [*Id.* at 310]. The letter advised that if Plaintiff Rollins "requested a

4

hearing" pursuant to state law, she was to "notify [Defendant Jones] within 30 days" [*See id.*]. Plaintiffs appealed those determinations [Docs. 104 at 4, 146 at 12].

Initially, Defendants appointed Chris Markel to serve as a hearing officer at the termination hearings for the appeals [Doc. 70-20 at 5; *see also* Doc. 104 at 4]. Defendants later selected Marshall Raines, Jr., instead of Markel [*See* Doc. 104 at 5; *see also* Doc. 70-20 at 3]. Raines was a Tennessee School Boards Association-approved hearing officer [*See* Doc. 70-20 at 1, 3]. No termination proceedings before Raines have yet occurred [*See* Docs. 146 at 12, 152 at 2].

Plaintiffs' Third Amended Complaint [Doc. 114], which is operative, contains five (5) counts. Count One alleges that "Defendants violated Plaintiffs' Fourteenth Amendment rights to procedural due process in their property and liberty interests" [Doc. 114 at 10]. The Third Amended Complaint also contains a "Breach of Contract" claim against Defendants PCBOE and Jones (Count Two), [*id.*], a "Defamation" claim against Defendant Robert Cole (Count Three), [*id.* at 11], a claim for violation of the "Tennessee Teacher Tenure Act" against Defendants PCBOE and Jones (Count Four), [*id.*], and a claim for violation of "T.C.A. § 49-2-301 et seq." against Defendants PCBOE and Jones (Count Five), [*id.*].

Plaintiffs filed a "Motion for Partial Summary Judgment Regarding Procedural Due Process Rights" [Doc. 103]. In that Motion, Plaintiffs argue that "Defendants violated their procedural due process rights under the Fourteenth Amendment by depriving them of their ***property interests*** in their continued employment without providing timely pre- and post-***suspension*** due process procedures" [Doc. 104 at 1 (emphasis added)]. Plaintiffs make clear that their Motion does not seek judgment on their state law claims (Counts Two through Five) or their liberty-based due process claims [*See* Doc. 104 at 1 n.1].

Defendants initially filed a more fulsome "Motion for Summary Judgment" [Doc. 145]. In that Motion, they asserted that there are no genuine issues as to any material fact, such that "[D]efendants are entitled to summary judgment" on "all claims asserted by [] plaintiff[s] in the Complaint" [Doc. 145 at 1].[4] Defendants also represented that Plaintiffs' state law claims are more "appropriately addressed in the termination hearings rather than by this court" [*Id.* at 30].

Plaintiffs agreed. In their "Response to Defendants' Motion for Summary Judgment and Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment" [Doc. 152], Plaintiffs "agree [that] the[] purely state law issues are . . . more appropriately addressed in the termination hearings rather than" this federal action [Doc. 152 at 2 (internal quotation marks omitted)]. Plaintiffs state that "an administrative Hearing Officer has been appointed to consider and resolve the purely state issues" and that the Parties "shall, in good faith, schedule a dismissal hearing (within 90 days)" of the Court adjudicating their motions [*Id.*].

Defendants later confirmed that the Parties "agree that all State-related claims" "should be dismissed" so the Parties can address the issues "through the available State law framework for termination" [Doc. 157 at 4]. Consistent with the Parties' agreement, the Court **DISMISSES** Plaintiffs' state law claims, Counts Two through Five, without prejudice. The only issues remaining before this Court in the cross-motions for summary judgment are Plaintiffs' due process claims arising out of their suspension and proposed termination (Count One) [*See* Doc. 114 at 10].

## II.    Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4]    Defendants assert that Defendant Cole "has or will be nonsuited and dismissed from this litigation by the plaintiffs" [Doc. 146 at 2 n.1; *see also id.* at 34]. That has not occurred.

Civ. P. 56(a). "[U]nique issues" are posed where, as here, parties file cross-motions for summary judgment. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). "When reviewing cross-motions for summary judgment," the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). The party moving for judgment on a claim bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted). "A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for" the opposing party. *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (quotation omitted). "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

### III.   Analysis

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

### A. No Party Is Entitled To Summary Judgment On Plaintiffs' Property-Based Due Process Claims.

To establish a property-based due process claim, a plaintiff must establish that "(1) [s]he was deprived of a protected . . . property interest; and (2) that the deprivation occurred without adequate procedural protections." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447

7

(6th Cir. 2022). Once a protected property interest is identified, "[t]o determine what process is constitutionally due," courts "generally balance[] three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. 924, 931 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Government's interest includes "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335 (citation omitted). "[I]t is well-established that violations of state law do not automatically translate into a deprivation of procedural due process." *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 354 (6th Cir. 2010) (quotation omitted).

"A fundamental requirement of due process is the opportunity to be heard." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 485 (6th Cir. 2014) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). That opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Id.* With limited exceptions not applicable here, "due process requires that a hearing is mandated before the deprivation of property . . . occurs." *Id.*; *see also Loudermill*, 470 U.S. at 542 ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* [s]he is deprived of any significant property interest." (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971))). That opportunity to be heard must also be accompanied by "adequate notice." *Sterling Hotels v. McKay*, 71 F.4th 463, 467 (6th Cir. 2023). Notice must include "an explanation of the charges giving rise to" the deprivation. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 566 (6th Cir. 2004).

8

Assuming for purposes of summary judgment that Plaintiffs each had a protected property interest,[5] a genuine dispute of material fact regarding whether Defendant Jones gave Plaintiffs a sufficient explanation of the charges against them in April 2019 prior to their suspension or proposed termination prevents the Court from granting summary judgment to any Party on Plaintiffs' property-based due process claim. *See id.* at 566. Plaintiffs testified that in the April 2019 meeting, Defendant Jones asked only whether Plaintiff Franklin wrote a grant to Whirlpool and whether Plaintiff Rollins knew about it [*See* Docs. 148-2 at 18 (Franklin Dep. 79:6-12), 148-10 at 11-12 (Rollins Dep. 54:18-55:6)]. That testimony stands in contrast to Defendant Jones's testimony that he relayed the full allegations against Plaintiffs to them [*See* Doc. 148-6 at 10 (Jones Dep. 66:3-8)]. Therefore, no Party has borne its burden of demonstrating that no genuine dispute of material fact exists as to what transpired at the April 2019 meeting. *See* Fed R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323.

The required extent of post-deprivation procedures is "inextricably intertwined with the scope of" pre-deprivation procedures. *See Carter v. W. Rsrv. Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985) (holding that where a pre-termination hearing was "abbreviated," the Due Process Clause requires the "post-termination hearing be substantially more" thorough). Because genuine disputes of material fact remain, at summary judgment, the Court cannot determine the content and breadth of Plaintiffs' April 2019 meeting with Defendant Jones. And this prevents the Court from determining the "extent of" the procedures that Defendants had to provide after that hearing to satisfy due process. *See Carter*, 767 F.2d at 273. Under the law, in assessing a due process claim, the Court must consider "the risk of an erroneous

---

[5] Defendants concede that "state law and Board Policy (and the MOU for Rollins), give both plaintiffs protectable interests assuring that they will not be terminated without adequate due process" [*See* Doc. 146 at 14].

9

deprivation of" a private interest "through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, at this stage in the litigation, the Court cannot determine what procedures were "used" at the April 2019 meeting and consequently cannot assess the "probable value" of "additional or substitute procedural safeguards." *See id.* At bottom, the Court cannot balance the relevant factors to determine if Defendants deprived Plaintiffs of a protected property interest without determining what occurred in Plaintiffs' April 2019 pre-suspension meeting. Accordingly, no Party is entitled to summary judgment on Plaintiffs' property-based due process claims.

## B. Defendants Are Entitled To Summary Judgment On Plaintiffs' Liberty-Based Due Process Claims.

To prove a liberty-based due process claim, a plaintiff must establish that "(1) [s]he was deprived of a protected liberty . . . interest; and (2) that the deprivation occurred without adequate procedural protections." *Hasanaj*, 35 F.4th at 447. "[L]iberty" extends to protect "[a] person's reputation, good name, honor, and integrity." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584 (6th Cir. 2021) (quoting *Quinn v. Shirley*, 293 F.3d 315, 319 (6th Cir. 2002)). Plaintiffs must establish five (5) elements to support a claim for deprivation of their liberty rights in their reputation:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. Second, a plaintiff is not deprived of [her] liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against [her] were false. Lastly, the public dissemination must have been voluntary.

*See Kaplan*, 10 F.4th at 584 (quoting *Quinn*, 293 F.3d at 320). "Once a plaintiff has established the existence of all five elements, [s]he is entitled to a name-clearing hearing if [s]he requests one." *Quinn*, 293 F.3d at 320 (quoting *Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000)). "It is

the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* (citing *Brown*, 214 F.3d at 723).

In this case, Plaintiffs allege that Defendants violated their liberty-based due process rights when they "[f]ailed to provide Plaintiffs with a timely and appropriate name clearing hearing" [Doc. 114 at 10]. It is not clear whether this claim concerns their suspension or proposed termination, or both. Either way, and both ways, Defendants are entitled to summary judgment.

**First**, Defendants did not deprive Plaintiffs of a protected liberty interest when they suspended them. "[W]here a state employee was not terminated incident to the unfavorable statement, there was no violation of the liberty interest protected by the Due Process Clauses." *Lisle v. Metro. Gov't of Nashville & Davidson Cnty.*, 73 F. App'x 782, 789 (6th Cir. 2003). Indeed, "[i]n every case upholding a liberty claim, termination" has been "a necessary precondition." *Id.* at 788. Plaintiffs cite *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009), to argue that a government may violate a liberty interest in conjunction with a suspension [*See* Doc. 152 at 32]. But in *Gunasekera*, the parties conceded that the plaintiff possessed a protected liberty interest. *See Gunasekera*, 551 F.3d at 469. The court, therefore, did "not need to apply [the] five-factor test used to decide whether someone is entitled to a name-clearing hearing due to a deprivation of his or her liberty interest"—the parties conceded that Plaintiff was entitled to a name-clearing hearing. *Id.* The dispute in that case, then, "boil[ed] down to what process" was due at the hearing "and whether such a hearing must be public." *Id.* Accordingly, to the extent Plaintiffs allege that Defendants violated their protected liberty interests in their reputations when Defendants suspended them, Defendants are entitled to summary judgment on that point.

**Second**, to the extent Plaintiffs' liberty-based claims are related to their proposed terminations, no denial of Plaintiffs' right to a name-clearing hearing with respect to their proposed

termination has occurred yet. A defendant does not actually "cause[] the deprivation of the liberty interest without due process" until it denies a plaintiff a name-clearing hearing. *See Quinn*, 293 F.3d at 320. The Parties anticipate holding a hearing related to Plaintiffs' proposed termination in the near future [*See* Doc. 152 at 2]. Therefore, Defendants have not, at least yet, denied Plaintiffs a name-clearing hearing. Any liberty-based claim related to Plaintiffs' proposed termination is thus premature. *See Quinn*, 293 F.3d at 320. Accordingly, to the extent Plaintiffs allege that Defendants have already violated their liberty interests in their reputation related to proposed termination, Defendants are entitled to summary judgment.

### C. Defendants Are Entitled To Summary Judgment On Plaintiffs' Due Process Hearing-Officer Claim.

Because Plaintiffs' due process hearing officer claim is distinct, it is best described in the Parties' own words. Plaintiffs allege that Defendants violated their due process rights when "Defendants unilaterally appointed a hearing officer, paid by Defendant [PCBOE] to rule on the merits of their appeals of the decisions to propose their terminations, even though all Defendants have a financial or other interest in the outcome of hearings before the hearing officer" [Doc. 114 at 10]. Defendants argue that "Plaintiffs have shown nothing in the way of facts to indicate that either of the hearing officers selected in their parallel proceedings lack impartiality" [Doc. 146 at 28]. In response, Plaintiffs counter "that this unique situation infringes upon both the appearance and reality of fundamental fairness—that allowing an opposing party to choose an administrative factfinder, who could make crucial decisions that could impact the issues being addressed in a long-pending federal case, is manifestly unfair" [Doc. 152 at 27]. "Given these circumstances," Plaintiffs contend, "fundamental fairness requires Plaintiffs have an opportunity to provide input into the selection process and ensure the new officer meets the statutory definition of 'impartial'" [*Id.* at 27-28].

"A person is entitled, as a general principle of due process, to have [her] cause heard before an impartial and neutral tribunal." *Yashon v. Hunt*, 825 F.2d 1016, 1027 (6th Cir. 1987). The Court "must start, however, from the presumption that" the hearing officers "are unbiased." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.* "[G]eneralized assumptions of possible interest" are insufficient. *Id.* at 196.

Here, Plaintiffs have identified no evidence showing that the hearing officers are partial or biased. Instead, Plaintiffs argue that they are entitled to "provide input" in the selection process because allowing Defendants to select a hearing officer without Plaintiffs' input "is manifestly unfair" [*See* Doc. 152 at 27-28]. That challenge is not a challenge to the hearing officers—it is a challenge to how the hearing officers were selected. The Due Process Clause of the Constitution does not entitle Plaintiffs to help select a hearing officer—it is permissible for a governmental entity to select a hearing officer without input from those individuals impacted. *See Schweiker*, 456 U.S. at 192-97 (no due process violation where the federal government appointed private insurance carriers' employees to act as hearing officers for Medicare benefit claims); *Klein v. City of Jackson*, 477 F. App'x 317, 318-21 (6th Cir. 2012) (no due process violation where a city-established hearings bureau hears challenges to building permit fines). "[G]eneralized assumptions of possible interest" are insufficient to support a due process claim. *See Schweiker*, 456 U.S. at 196. Therefore, Defendants are entitled to summary judgment on this point.

### D. Defendant Jones Is Not Entitled To Dismissal From This Action.

Defendant Jones contends "that he is entitled to be dismissed" because "he is entitled to qualified immunity in whole or part, and because plaintiffs cannot establish the level of culpability necessary to hold [him] liable under 42 U.S.C. § 1983" [Doc. 146 at 31]. As for qualified

13

immunity, Defendant Jones concedes that "[w]ithout question, some type of pre-suspension right of reply was in order," but he argues that he "had reasonable grounds t[hat] both" Plaintiffs "should be suspended pending investigation" [Doc. 146 at 32-33]. As for "culpability," Defendant Jones argues that if a constitutional violation did occur, "the cause of any injuries to [P]laintiffs resulted from [their] own conduct, and not anything that [Defendant Jones] did or failed to do" [*Id.* at 33].

*First*, on this record, Defendant Jones is not entitled to qualified immunity. "To overcome a qualified immunity defense, the plaintiff must show (1) that the defendant violated h[er] federal rights and (2) that the 'contours of the right' were sufficiently clear that 'a reasonable officer in the defendant's position should have known his conduct violated that right.'" *Ramsey v. Rivard*, No. 23-1941, ---F.4th----, 2024 WL 3616826, *4 (6th Cir. Aug. 1, 2024) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000)). The Court views the facts in the light most favorable to Plaintiffs. *See United Pet Supply, Inc.,* 768 F.3d at 478. "Summary judgment must be denied if 'there is a factual dispute on which the question of immunity turns.'" *Ramsey*, 2024 WL 3616826, at *4 (quoting *Gardenhire*, 205 F.3d at 311).

Viewing the facts in the light most favorable to Plaintiffs, Defendant Jones did not provide Plaintiffs adequate notice of the charges against them in April 2019 [*See* Docs. 148-2 at 18 (Franklin Dep. 79:6-9), 148-10 at 11-12 (Rollins Dep. 54:18-55:6)]. That lack of adequate notice coupled with a more than two year delay to investigate the allegations of fraud before submitting notices of proposed termination to Plaintiffs would constitute a due process violation. *See Loudermill*, 470 U.S. at 542; *United Pet Supply*, 768 F.3d at 488 (confirming that "there is no dispute that *never* providing an opportunity to challenge" a deprivation "violates due process"). And the need for "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in h[er] employment" "has been settled for some time

now." *See Loudermill*, 470 U.S. at 542 (quotations and citations omitted) (decided in 1985); *Singfield*, 389 F.3d at 566 ("[T]he employee must be given notice of the charges against him, an explanation of the employer's evidence, and a chance to present his side of the story" (quoting *Loudermill*, 470 U.S. at 532)). As has the right to "receive[] a sufficiently prompt postsuspension hearing" following "a *temporary suspension* without pay." *See Gilbert*, 520 U.S. at 932 (decided in 1997). Thus, under these facts, a reasonable officer in Defendant Jones's "position should have known his conduct violated" those rights. *See Ramsey*, 2024 WL 3616826, at *4.

For similar reasons, Defendant Jones has not established that he should be dismissed from this action based on a lack of "culpability." As discussed above, there is a genuine dispute of material fact as to what occurred at the April 2019 meeting. That dispute prevents the Court from determining that Defendant Jones lacked the requisite state of mind to violate due process. *See Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996) (concluding that deprivations in violation of procedural due process require acting with "something more than negligence"). Therefore, Defendant Jones is not entitled to dismissal.

## IV.    Conclusion

For the reasons stated above, the Court **DENIES** Plaintiffs' "Motion for Partial Summary Judgment" [Doc. 103] and **GRANTS IN PART** Defendants' "Motion for Summary Judgment" [Doc. 145]. Consistent with the Parties' agreement, the Court **DISMISSES** Counts Two, Three, Four, and Five without prejudice so the Parties can appropriately address those issues in state administrative proceedings. Further, the Court **DISMISSES** (1) Plaintiffs' liberty-based due process claims and (2) Plaintiffs' due process claims related to selection of a hearing officer.

And the Court **STAYS** this action **until December 16, 2024** to allow the Parties to hold appropriate administrative hearings and engage in appropriate procedures related to Plaintiffs'

proposed termination. It would be prudent for the Parties to engage in that process promptly, comprehensively, and in good faith. By **December 2,** the Parties **SHALL** file a joint Status Report indicating how they propose to proceed with the remainder of this federal action. In light of the recent developments in this litigation, the Court also **DENIES** the Parties' pending Motions in Limine and Objections [Docs. 160-67, 172, 173, 174, and 181] as **MOOT** with leave to refile. **All hearings, deadlines, and the trial of this matter are STAYED.**

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge